**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | |
|---|---|
| DONALD E. HAMPTON, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting Commissioner )<br>of the Social Security Administration, )<br>      Defendant. ) | CAUSE NO.: 1:12-CV-275-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Donald E. Hampton on August 14, 2012, and an Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 21], filed by Plaintiff on March 26, 2013. Plaintiff requests that the November 22, 2010, decision denying Disability Insurance Benefits and Supplemental Security Income benefits be remanded. For the reasons set forth below, the Court GRANTS Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On March 19, 2009, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Insurance ("SSI"), alleging disability as of October 1, 2004, due to various mental and physical impairments. Plaintiff was denied initially and on reconsideration, and he timely filed a request for hearing. On August 4, 2010, a hearing was held before Administrative Law Judge ("ALJ") Terry L. Miller at which Plaintiff, Plaintiff's brother, and a Vocational Expert ("VE") testified. On November 22, 2010, the ALJ issued a decision in which he found Plaintiff not disabled. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Commissioner's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate

Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

**A.     Background**

Plaintiff was 43 years old at the time of his alleged onset date. He had a high school equivalency diploma. He had past relevant work as an industrial cleaner and a foundry worker.

**B.     Medical Evidence**

Because Plaintiff bases his appeal solely on the ALJ's evaluation of Plaintiff's mental impairments, the Court will discuss only evidence related to those impairments. The first record relating to Plaintiff's mental health is a psychological evaluation from September 2006, done by Neil S. Shamberg, PhD, at the request of Plaintiff's Vocational Rehabilitation counselor. Dr. Shamberg noted that Plaintiff had been prescribed medication to treat depression by a doctor at a local clinic. Dr. Shamberg agreed that Plaintiff was suffering from "major depression with some psychotic features" and wrote that he saw evidence of "at least three learning disabilities." AR 319, 322. He assigned a global assessment of functioning ("GAF") score of 34. Dr. Shamberg recommended Plaintiff seek psychotherapy and further medical treatment at Park Center.

Plaintiff's Park Center records begin with a treatment plan from April 2007. In it, the clinician notes that Plaintiff believed his medications to be effective in managing his symptoms and that his affect and thought content were normal, but it was also noted that Plaintiff had suffered from excessive worry, recent memory deficits, and difficulty with concentration. AR 479. A GAF of 55 was assigned.

The next record from Park Center is a mental status exam report prepared by psychiatric nurse Viann Ellsworth in June 2008. The record contains two more reports from visits with Ms. Ellsworth in 2008, five reports from 2009, and two reports from 2010, the last of which is dated less than two months before Plaintiff's administrative hearing. The 2008 reports are generally unremarkable, noting that Plaintiff's medications seemed to be treating his symptoms but recording his affect as "blunted" on one occasion and his thought content as "helpless" on another. At Plaintiff's first visit with Ms. Ellsworth in 2009, however, Ms. Ellsworth reported that Plaintiff's medications were not adequately addressing his symptoms, so she adjusted them. She also noted sleep problems due to pain, stress, or medication side effects at all five visits in 2009 and checked the box for "impaired recent memory" for two of those visits. She also noted at various times throughout 2009 Plaintiff's blunted affect; helpless, hopeless, and paranoid thought content; fair judgment; and withdrawn behavior. In 2010, Ms. Ellsworth recorded sleep problems due to stress on one report and impaired recent memory on the other. She also noted Plaintiff's mood was depressed or fluctuating and that his judgment was fair or poor.

On August 4, 2010, Ms. Ellsworth filled out a form titled "Opinion on Ability to do Work-Related Mental Activities." She responded "Yes" when asked if Plaintiff's mental illness was serious enough to cause Plaintiff to be absent from work. She explained that Plaintiff had missed his scheduled appointments with her that year because he forgot them and that he would likely miss work because it would be difficult for him to remember a schedule. She also wrote that he would call off or miss work because he was "too tired to function" because of his sleep problems. Ms. Ellsworth also wrote that Plaintiff easily becomes stressed and overwhelmed, which would require him to take 30 to 60 minutes of extra breaks a day to calm down.

3

In September 2009, Dr. Sherwin Kepes performed a mental status examination at the request of the Social Security Administration. He wrote that Plaintiff "appeared rather depressed, forlorn, and tearful" and diagnosed him with schizoaffective disorder. AR 380. He also noted some problems performing memory tests and wrote that Plaintiff reported not sleeping well and that he was "nervous and afraid of sleeping." AR 378. Dr. Kepes assigned a GAF of 49.

**C.    Plaintiff's Testimony**

At the administrative hearing, Plaintiff testified that he has problems getting to sleep every night even with medications intended to help him sleep and has problems staying asleep because he does not like the night and because he hears things. Plaintiff testified that his siblings make sure he keeps his appointments because he "forget[s] everything." AR 83. He also stated that on a bad day, which happens two or three times a week, he "worr[ies] so hard [his] chest starts hurting like [he's] having a heart attack." AR 87.

**D.    The ALJ's Decision**

On November 22, 2010, the ALJ issued a decision. Because an earlier application for disability benefits had been denied by a different ALJ on March 9, 2009, and no new or material evidence relating to the previously adjudicated period had been introduced, ALJ Miller's decision addresses only the period of time beginning on March 10, 2009. He made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since October 1, 2004, the alleged onset date.

3. The claimant has the following severe impairments: low back pain with degenerative disc changes; history of total right hip replacement and degenerative joint disease of left hip; bilateral knee pain due to osteoarthritis, left worse than right; history of left

4

rotator cuff surgery; major depression and schizoaffective disorder; obesity; and reading math and written expression disorders.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) (i.e. the ability to lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently, the ability to sit up to 6 out of 8 hours during an 8 hour workday, and stand/walk, in combination, up to 6 out of 8 hours in an 8 hour workday), with the following additional restrictions: the claimant can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes or scaffolds; only occasionally reach overhead; and is limited to unskilled work (i.e. understanding, remembering, and carrying out simple repetitive tasks during an eight hour workday). The claimant is further restricted to needing a flexible work pace with only brief and routine interactions with others; and he cannot perform any job requiring more than occasional reading, writing, and math calculations.

6. The claimant is unable to perform any past relevant work.

7. The claimant was a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under any disability, as defined in the Social Security Act, from October 1, 2004, through the date of this decision.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal or remand of the ALJ's decision based on the following arguments: (1) the ALJ improperly considered Plaintiff's failure to follow prescribed medical treatment in denying benefits and (2) the ALJ improperly evaluated the opinion of psychiatric nurse Viann Ellsworth.

### A. Failure to Follow Prescribed Medical Treatment

Plaintiff first argues that the ALJ committed reversible error by improperly considering Plaintiff's failure to follow the treatment plan prescribed by his mental healthcare providers. Social Security regulations provide: "In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 C.F.R. §§ 404.1530(a), 416.930(a). The failure to do so without good reason will result in a denial of benefits. 20 C.F.R. §§ 404.1530(b), 416.930(b). Social Security Ruling 82-59 describes the conditions that must exist for an ALJ to deny a claimant benefits based on his failure to follow prescribed treatment pursuant to Sections 404.1530 and 416.930. *See* SSR 82-59, 1982 WL 31384 (1982). First, the ALJ must conclude that the claimant's impairments prevent him from engaging in any substantial gainful activity and that the impairments have lasted or are expected to last for twelve months. *Id.* at *793. Then the ALJ must determine that "[t]reatment which is clearly expected to restore capacity to engage in any SGA . . . has been prescribed by a treating source." *Id.* If those conditions are met and the claimant has unjustifiably refused to follow the prescribed treatment, the ALJ will deny benefits. *Id.* The ALJ also has an obligation to develop the record in making the determination of whether the claimant's refusal is justified. *Id.* at *794. In other words, an ALJ may deny benefits to someone when the only thing preventing him from being able to work is an unjustified refusal to

9

comply with treatment, but Ruling 82-59 places a significant burden on the ALJ to confirm that non-compliance is, in fact, the only thing preventing the claimant from working.

Plaintiff argues that the ALJ committed reversible error by failing to establish that any prescribed mental health treatment plan was "clearly expected to restore [Plaintiff's] capacity to engage in SGA" and failing to develop the record to determine whether Plaintiff's failure to comply with his treatment plan was justified. As part of his RFC determination, the ALJ wrote:

> Pursuant to Social Security Regulations (20 CFR 404.1530 and 416.930) and rulings (SSR 82-59), implicit in a finding of disability is a determination that reasonable and available medical and/or psychological treatment modalities would not restore a claimant's ability to work. In this case, the undersigned is not persuaded that all reasonable effort has been made to obtain proper and available mental health treatment which could help in allowing the claimant to perform work within his mental and emotional limitations.

AR 31. Later, when discussing the credibility of Plaintiff's mental health symptoms, the ALJ states: "[T]he undersigned finds . . . that when the claimant is in therapy and takes his prescribed psychotropic medication his mood is stable and would allow for work consistent with the aforementioned residual functioning capacity." AR 32. As the Plaintiff argues, the decision says nothing about whether any treatment plan designed by Plaintiff's mental health providers could be expected to restore Plaintiff's ability to work. It also says nothing about Plaintiff's reasons for non-compliance. The hearing transcript shows that the ALJ asked Plaintiff about his treatment plan, but the only question related to his compliance with it was whether he was taking his medications as prescribed. AR 73-74, 80. Plaintiff answered that he was taking his medications with help from his family. AR 80.

The Commissioner does not dispute that the ALJ did not follow the analysis prescribed by Ruling 82-59, but argues that no legal error was committed because Ruling 82-59 does not even

apply in this situation. She explains that Ruling 82-59 only applies when an ALJ finds a claimant disabled but nonetheless denies benefits because of the claimant's failure to follow a prescribed treatment plan that would restore his ability to work. In this case, the Commissioner argues, the ALJ never found Plaintiff disabled, so the rest of the analysis is unnecessary.

The Commissioner is correct that an ALJ is not required to perform the analysis prescribed by Ruling 82-59 if the ALJ finds a claimant is not disabled. After all, if someone is able to work despite not following a treatment plan, it would not matter that treatment would make him even better able to work. However, the Commissioner misses a minor but critical detail in the ALJ's decision: the ALJ never actually found that Plaintiff is not disabled. The ALJ states, "[W]hen the claimant is in therapy and takes his prescribed psychotropic medication his mood is stable and *would allow* for work consistent with the aforementioned residual functioning capacity." AR 32 (emphasis added). This phrasing indicates that the ALJ determined what Plaintiff's RFC would be if he were fully compliant with a prescribed treatment plan. Any finding on the ultimate question of disability based on this hypothetical RFC would itself be hypothetical. Accordingly, the ALJ never actually found that Plaintiff *is not* disabled, but found that Plaintiff *would not be* disabled based on what his RFC *would have been* had he fully complied with treatment.

Had the ALJ based his RFC finding on Plaintiff's limitations as they actually existed, the ALJ may still have concluded that Plaintiff was not disabled and would have had no need to perform the Ruling 82-59 analysis. However, the Court cannot know what the outcome would have been had the ALJ not considered Plaintiff's non-compliance in his RFC analysis. In effect, the ALJ just moved the conjecture about what effect treatment would have on Plaintiff's disability from the end of his analysis to the middle. Whether done at the end or in the middle, however, the ALJ has a

11

heavy burden under Ruling 82-59 to support his conjecture with a determination that "[t]reatment which is clearly expected to restore capacity to engage in any SGA . . . has been prescribed by a treating source" and that Plaintiff has unjustifiably refused that treatment. The ALJ did not do so here, and failure to follow the requirements prescribed by a Social Security Ruling is reversible error requiring remand. *See Prince v. Sullivan*, 933 F.2d 598, 602-03 (7th Cir. 1991).

The Commissioner also argues that the ALJ meant to discuss Plaintiff's non-compliance with treatment as a factor in evaluating the credibility of Plaintiff's subjective complaints and not actually in the context of Sections 404.1530 and 416.930. Even if the Court ignored the ALJ's explicit citation to Ruling 82-59 and 20 C.F.R. §§ 404.1530 and 416.930 and believed the Commissioner's argument, the ALJ's decision would still warrant remand. When considering non-compliance with treatment as a factor in determining whether a claimant's statements regarding his symptoms are credible, an ALJ is also required make a determination about whether non-compliance with treatment is justified and develop the record accordingly. *See* SSR 96-7p, 1996 WL 374186, at 7 (July 2, 1996); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.").

Accordingly, the Court remands this matter for further consideration pursuant to the requirements of SSR 82-59 of whether Plaintiff is disabled at his current level of compliance with his prescribed treatment plan and if so, whether full compliance with that treatment plan would

render him able to work and whether his non-compliance is unjustified.

B.      **Weight of Treating Psychiatric Nurse's Opinion**

Plaintiff also argues that the ALJ's evaluation of psychiatric nurse Viann Ellsworth's opinion was not supported by substantial evidence. In addition to considering the opinions of "acceptable medical sources" such as physicians and psychologist, an ALJ considers opinions from other sources, including nurses, in determining the severity of a claimant's impairments and how they affect his ability to function. SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006). Social Security Ruling 06-03p instructs ALJs to apply the same factors in weighing the opinions of nurses as they would in applying opinions of acceptable medical sources. *Id.* at *4. These factors include how long the source has known and how frequently the source has seen the claimant; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion. *Id.* at *4-5; *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). An ALJ need only minimally articulate his reasons for discrediting a medical source's opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

Ms. Ellsworth opined in a two page questionnaire that Plaintiff would miss more than three days of work a month because he would have difficulty remembering his schedule just like he had trouble remembering his appointments with her and because problems sleeping would make him "too tired to function." AR 481. She also wrote that Plaintiff would need to take approximately 30 to 60 extra minutes of breaks a day to calm himself because even minor problems would cause him stress and make him feel overwhelmed. The ALJ gave "little weight" to her opinion because it

13

"contrasts sharply with the other evidence of the record." AR 31. He also wrote that Ms. Ellsworth's "opinion may have carried more weight if the evidence had shown the claimant had sought and received consistent mental health treatment since March 2009." AR 31.

The ALJ did not state specifically which evidence he believed contradicted Ms. Ellsworth's opinion, but earlier in his decision, he summarized the limiting effects of Plaintiff's mental health issues. He cited two specific Park Center records, one that indicated that Plaintiff's medications were working and that his paranoia "did not occupy his attention that often" and another that stated that Plaintiff was depressed but that his depression appeared to be related more to his physical than mental issues. AR 29. He also noted that the record showed no psychiatric hospitalizations and that a report from May 2009 described Plaintiff as having no suicidal or homicidal thoughts, no memory problems, normal perception, and good judgment.

Plaintiff argues that the ALJ's statement that Ms. Ellsworth's opinion conflicts with other evidence is the record is not supported by substantial evidence because he impermissibly "cherry-picks" evidence which contradicts her opinion while ignoring numerous other records which are consistent with her opinion. As Plaintiff states, Ms. Ellsworth noted his "impaired recent memory" in at least four reports, supporting her opinion that Plaintiff's poor memory would cause problems with absenteeism. Plaintiff's 2007 Park Center treatment plan also noted memory problems, as did Dr. Kepes's report from his consultative exam. Plaintiff himself testified that his siblings have to help him remember appointments because of his poor memory. Plaintiff also testified extensively about his problems sleeping, and at least five reports from Park Center note his sleep difficulties. The ALJ cited one record which noted no memory problems, but a single "good day" is not substantial evidence to support his statement that Ms. Ellsworth's opinion "contrasts sharply" with

other evidence in the record when so many other sources indicate Plaintiff had memory and sleep problems. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [his] overall condition.")(citing *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Wilson v. Astrue*, 493 F.3d 965, 967-68 (8th Cir. 2007); *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006)).

Plaintiff also argues that the ALJ's discounting of Ms. Ellsworth's opinion because Plaintiff failed to seek and receive "consistent mental health treatment since March 2009" is factually incorrect because although Plaintiff missed some scheduled appointments, he did see Ms. Ellsworth for "walk-in" appointments in February and May 2010. The record also reflects that Plaintiff appeared for at least five other visits with Ms. Ellsworth between March 2009 and the hearing date. In addition to being factually inaccurate, Plaintiff argues that any failure to follow treatment on Plaintiff's part should not reflect on the validity of Ms. Ellsworth's opinion. The Commissioner does not respond to Plaintiff's argument on this point, and it is not otherwise apparent how Plaintiff's non-compliance is relevant to the evaluation of Ms. Ellsworth's opinion. Without further explanation for how the ALJ believes this fact reflects on Ms. Ellsworth's opinion, the Court cannot say that it constitutes substantial evidence to support the ALJ's assignment of "little weight" to Ms. Ellsworth's opinion.

Accordingly, the ALJ is instructed on remand to re-evaluate the weight given to Ms. Ellsworth's opinion or clarify the reasons for the weight assigned her opinion.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 21] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 7th day of February, 2014.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record